IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| TERRENCE HAZEL | § | |
| v. | § | CIVIL ACTION NO. 9:08cv216 |
| OLIVER BELL, ET AL. | § | |

### MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND ENTERING FINAL JUDGMENT

The Plaintiff Terrence Hazel, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Hazel raised a broad-based challenge to the conditions of confinement within the Eastham Unit of TDCJ, specifically citing understaffing, overcrowding, the food service, lockdowns, conditions within the showers, the medical care, racial discrimination, and parole procedures. He also complained about a specific incident which had occurred on December 15, 2008, shortly after his lawsuit was filed. As part of the understaffing and overcrowding complaint, Hazel raised issues concerning recreation, law library attendance, the plumbing and electrical services, inmate safety, and the conditions which existed within the prison during Hurricane Ike.

An evidentiary hearing was conducted and the Magistrate Judge ordered the Defendants to answer the lawsuit. The Defendants filed a motion for summary judgment, to which Hazel filed a response. Hazel also filed a motion for partial summary judgment of his own.

After reviewing the pleadings, testimony, and competent summary judgment evidence, the Magistrate Judge issued a Report on January 8, 2010, recommending that the Defendants' motion for summary judgment be granted and that the lawsuit be dismissed with prejudice. After obtaining an extension of time, Hazel filed objections to the Magistrate Judge's Report on March 10, 2010.

In his objections, Hazel says first that it was an "abuse of discretion" to require him to proceed this far without counsel, and asks that counsel be appointed. He says that he has not been afforded a "fair opportunity" to present his claims and says that the Magistrate Judge appears to be "prejudiced toward inmate litigation." He complains that not all of his motions were ruled upon and that he has been unable to appeal rulings of the Magistrate Judge to the District Court.

Similarly, Hazel complains that he has been denied "numerous opportunities to amend his complaint going back to dates prior to transfer from the Western District," and that he was not allowed to use interrogatories and requests for admissions to obtain the discovery needed to substantiate his claims. Hazel's requests to amend his complaint were denied because the proposed amendments did not comply with the Local Rules for the Eastern District of Texas. A lengthy evidentiary hearing was held, at which Hazel was permitted to testify concerning his claims; the Fifth Circuit has held that such a hearing is "in the nature of an amended complaint or more definite statement." Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). Hazel's objection on this point is without merit.

Next, Hazel says that he has been "abruptly transferred" to the Diboll Unit, where there is "no electricity for inmate use," and the law library has no federal reporters or Shepard's citators. He speculates that his reclassification to Diboll is "a slick way of placing obstacles to his litigation carefully in place" and says when his friends and family complained about the transfer, the response from the TDCJ Office of the Ombudsman was "no comment, offender has active litigation against the agency." The Supreme Court has held that inmates have no right to be confined at any particular penal institution within the state. Meachum v. Fano, 427 U.S. 215, 224 (1976); *see also* Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982). Hazel has failed to offer anything beyond speculation

that his transfer to the Diboll Unit was related to this lawsuit; in addition, the Court notes that because of Hazel's transfer to the Diboll Unit, his requests for injunctive relief specific to the Eastham Unit are now moot. *See* Gillespie v. Crawford, 858 F.2d 1101, 1102 (5th Cir. 1988) (claim for injunctive relief from prison conditions mooted by inmate's parole); Rocky v. King, 900 F.2d 864, 867 (5th Cir. 1990) (inmate's claim for injunctive relief regarding conditions of field work mooted by removal of inmate from field work). Hazel's objection on this point is without merit.

Hazel goes on to complain that the Magistrate Judge did not invoke the Court's authority to apply supplemental jurisdiction to his complaint, although he did not mention supplemental jurisdiction in his complaint or at the evidentiary hearing. Because Hazel did not invoke the pendent jurisdiction of the Court, the Court had no occasion to consider the merits of any state law claim which he may have. *See* Ruiz v. Estelle, 679 F.2d 1115, 1158 (5th Cir.), *modified on other grounds* 688 F.2d 266 (5th Cir. 1982), *cert. denied* 460 U.S. 1042, 103 S.Ct. 1438 (1983) (district court should not, of its own volition, consider after trial state law claims not pleaded by the plaintiff). Even had Hazel invoked pendent jurisdiction, the exercise of pendent jurisdiction is discretionary with the district court. Wong v. Stripling, 881 F.2d 200, 203-04 (5th Cir. 1989). Furthermore, pendent jurisdiction should not ordinarily be exercised where there is no federal claim. Slaughter v. Allstate Insurance Co., 803 F.2d 857 (5th Cir. 1986). Hazel has not shown that he has a viable constitutional claim and so his objection on this point is without merit.

Next, Hazel complains that the Magistrate Judge used the record from the evidentiary hearing in her Report, saying that the record "is filled with inaccuracies and misunderstandings and errors" and that at the hearing, he was "forced to amend his complaint without the benefit of any prior notice that he would have to do so." He says that he "forgot things" and was unable to present a cohesive presentation. The docket reflects that Hazel received notice of the evidentiary hearing a month before it was held. He points to no inaccuracies, misunderstandings, or errors from the record upon which the Magistrate Judge relied. His objection on this ground is without merit.

Next, Hazel complains about the TDCJ grievance procedure, saying that this procedure "does not provide for any meaningful opportunity to redress issues" and that the rules prevent the filing of more than one grievance every seven days; he says that he has been faced with several instances in which there were two or three events which he wanted to grieve occurring in one seven-day period, so he was forced to write letters and send inmate request forms in order to preserve the fact that he had attempted administrative review before coming to court. He says that the federal courts should be able to see the "obstructions or hindrances or shenanigans" which the defendants are doing to prevent "meaningful use" of the grievance procedure. The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005). Hazel's objection on this ground is without merit.

Hazel says that when he filed the complaint, he was told by another inmate that he would need to move to recuse the Magistrate Judge because she "is prejudiced toward inmate litigation" and "will find a way to dismiss the case." He says that the only reason he did not do this was because he "needed to see in writing and have on record the mishandling of inmate litigation that it would be obvious to the Department of Justice that something must be done about how inmate litigation is being handled here in Texas." This objection is without merit.

Turning to his substantive issues, Hazel says that the Magistrate Judge was "hoodwinked by our crafty defendants and their refusal to fully disclose." He says that no penal system in the world has ever attempted to house over 150,000 inmates in the manner which Texas is doing, and that the Court must acknowledge "that the defendants must be doing more than simply incarcerating people in order to maintain such a large system, without pay to the inmates and without any significant funding from the kinds of programs and services essential to their services." He says that TDCJ is no longer 30,000 inmates but 150,000, and that the defendants have inmates "stacked like cords of wood"; he says that the defendants "cannot be allowed to simply stuff inmates in every nook and cranny they have, ignoring the classification system, health, and psychological well-being of staff,

inmates, and the public." Hazel acknowledges that TDCJ is providing sign-on bonuses in an effort to hire more staff but speculates that once the economy improves, these people will leave and the situation will be even worse. This objection fails to identify any errors in the Magistrate Judge's Report and is without merit.

Hazel complains of an incident in which "white racist inmates Johnny Long and Frank Riddle" discriminated against him because he is black, and used the fact that Hazel wanted the lights on, while the other inmates wanted them off, as an excuse to have him moved and deny him participation in the Therapon program. With reference to the December 2008 incident, Hazel complains that the medical staff ignored a referral he received to the infectious diseases department, and complains that overcrowding prevented him from being placed back in G2 housing until January 17, 2009. He says that according to prison classification policies, in order to keep an inmate on transient status over 30 days, the prison officials must get permission from Huntsville every 10 days, but this was not done because it would have documented overcrowding. He says that it was "obvious that staff misconduct was in play" in the incident but that the defendants state that no staff retaliation was ever complained of. The fact that housing for a particular classification status is in short supply on a particular unit does not show that the entire prison system is unconstitutionally overcrowded. In addition, Hazel had no constitutional right to participate in the Therapon program, nor has he shown that any of the named defendants were responsible for his removal from this program. His objection on this point is without merit.

Hazel says that it is obvious that there are not enough guards when every upstairs dormitory is "completely unmanned 24/7." He says that guards have to go from one cellblock to the other, leaving one unmanned at all times. Hazel says that the Ruiz case decreed that inmates should have 40 to 60 square feet of living space, but there are two inmates in a 45 spare foot cell with out of cell time limited by the understaffing. The fact that the prison system is short of guards was documented by the Magistrate Judge, as is the fact that the prison system is trying to rectify the problem through

the use of sign-on bonuses.  However, Hazel has not shown that this understaffing has led to constitutional violations.  His objection on this ground is without merit.

With regard to Hurricane Ike, Hazel says that the water and power were only off in areas in which black and Hispanic inmates lived, and that this was done by the choice of the defendants, not as a result of the disruptions caused by a major hurricane.  He says that when the inmates on the cell blocks "almost rioted," Captain Lamb came into the prison in free-world clothes to deliver pitchers of ice water, which he did for several hours.  Hazel says that the prison officials "fraudulently represented Eastham as having backup generators and 24/7 security lights in order to obtain grants through the Safe Prison Act," but in fact no such things existed.  He adds that he never saw any working fans or ventilation systems during the entire time that he was at the Eastham Unit, which he deems "a serious violation of air quality standards." By his own admission, Hazel acknowledges that prison officials brought water into the cell blocks when the problem existed.  His objection on this point is without merit.

Hazel says that the Eastham Unit is "one of the last beacons of 'white supremacy.'" He contends that in virtually every single staff member, and on every job and housing unit, there exists an environment of "slavery," in which blacks and Hispanics are treated and expected to accept being "lesser than whites."  When he did not go along and showed that he did not "know his place," Hazel says that he was determined to be a problem, harassed, and "set up to be attacked."  Hazel's vague and general allegations of racial discrimination are insufficient to show liability on the part of any of the named defendants, and his objection on this point is without merit.

Hazel states that he has been denied access to "appropriately qualified medical personnel," who "failed to inquire about the facts necessary to make professional medical judgments," and failed to carry out medical orders.  He says that non-medical factors, such as budgetary considerations, have been relied upon in making treatment decisions, and that the dental care is inadequate.  He cites an article quoting Dr. Ben Raimer talking about the inadequacies of the Texas prison health care system, although Dr. Raimer states in the quoted article that the system is constitutional.  Hazel also

cites an article from the Daily Texan, the University of Texas student newspaper, regarding the incarceration of mentally ill prisoners, although there is no suggestion that Hazel suffers from mental illness. He does refer to an incident in which he says that he did not eat for an "extended time," and indicates that he should have been force-fed, but says that he was not; instead, Hazel says, the only thing that saved him was that Captain English found that he had violated no disciplinary rules, and he was released from confinement. Hazel has failed to show that any of the named defendants were deliberately indifferent to his serious medical needs and his objection on this point is without merit.

On another occasion, Hazel says that he suffered chest pains and was "stood on the wall." He states that he asked to participate in making medical decisions with the medical supervisor, but no medical staff was called. He says that he has shown constitutional deprivations surrounding the medical care, but Hazel did not name any defendants affiliated with the University of Texas Medical Branch, which is the agency that provides health care to prisoners at the Eastham Unit.[1] His objection on this point is without merit.

Hazel says that he has lost property on several occasions because the officials do not follow policy when inmates are placed in segregation. He says that discovery and interrogatories would have provided evidence of numerous inmates "losing all property and being simply robbed by apathetic and dishonest staff." Hazel fails to show that any such evidence of other inmates being robbed was relevant to his claim that property was lost due to failure to follow policy. In addition, post-deprivation state remedies exist for his claims of loss of property which preclude his bringing these claims through the vehicle of a Section 1983 lawsuit. Hazel's objection on this point is without merit.

Hazel says that staffing shortages have led to "blatant disregard for the classification plan," and that simply mixing all classifications of inmates creates "a danger of grand proportions." Hazel cites no specific facts to show that he has been classified with inmates in a more dangerous

---

[1]The Texas prison system contracts with UTMB and with Texas Tech University to provide health care to state prisoners.

classification level than himself or that any harm has resulted from this. His objection on this point is without merit.

Next, Hazel complains that the prison does not offer "meat-free diets," saying that when he receives a sack meal, he is told "don't eat the meat." He says that a meat-free diet is called for by his religious faith, but that the only meat substitute he gets is peanut butter, and sometimes not very much. Hazel has failed to show that the food service policies amount to a violation of his right to practice his religion or his rights under the Religious Land Use and Institutionalized Persons Act. His objection on this point is without merit.

Hazel says that the defendants are "misleading the court and being dishonest," and contends that his claims are such that "no unit official can fix them." He says that "staff shortages and overcrowding are controlled by Huntsville" and the Parole Board.

Returning to the subject of the December 2008 assault by his cellmate, inmate King, Hazel says that this attack was "clearly orchestrated by the EA [Eastham Unit] staff to bait plaintiff into assaulting King." While conceding that King was a "psych patient," Hazel nonetheless quotes King as saying "they want me to hurt you" and "no officers are coming." When this is combined with his transfer from the Therapon program over a dispute about the lights, and the fact that he has had gang-related and violent cellmates in the past, Hazel says that this is a chronology of events from which retaliation may be implied. He says that the Magistrate Judge's "refusal to demand full disclosure" and refusal to allow Hazel to amend his complaint has prevented his substantiating his complaint with "physical proof." The Magistrate Judge carefully reviewed the events and Hazel's claim of retaliation, and concluded that under prevailing Fifth Circuit authority, Hazel had failed to set out a viable claim of retaliation. Hazel's objections fail to show that the Magistrate Judge's conclusion in this regard was in error. His objection on this point is without merit.

Hazel again complains of the "impromptu" nature of the hearing, although he received notice of the hearing on December 5, 2008, and the hearing was held on January 8, 2009. He says that the actions of the defendants in "fabricating the effects of Ike" as well as the under-reporting of "the

flood of unsupervised psych patients" clearly exacerbated the incident with King in some unspecified way, as well as the ability of "unscrupulous employees to use King to attack plaintiff." Hazel shows no connection between the event of Hurricane Ike and the incident with King several months later, and as the Magistrate Judge pointed out, Hazel named only supervisory employees as defendants, failing to show that any of them were involved with the King incident. His objection on this point is without merit.

Hazel asserts that his claim of racism cannot be substantiated without full disclosure and complete discovery, as well as statistical analysis and expert testimony. He says that this cannot be done by an indigent inmate and that it is "unfair and an abuse of discretion" to expect him to be able to litigate at such a level. The Fifth Circuit has held that prisoners cannot raise general claims of discrimination and then make "a blind search of prison records to see if anything can be found." *See* Whittington v. Lynaugh, 842 F.2d 818, 820 (5th Cir. 1988). Hazel's objections fail to show that the Magistrate Judge erred with regard to his claim of racism, and are without merit.

With regard to parole, Hazel says that an affidavit from Sharon Threadgill of the TDCJ time computation department shows that he has had bonus time in the past, but that this time has apparently disappeared. Hazel says that this is proof of the fraud being carried out by the prison officials. He says that Threadgill wrote an affidavit in another case which Hazel had filed, setting out the time which Hazel had accumulated to include some 11 months worth of bonus time, but that this time has disappeared from subsequent time calculation sheets. A review of the other case which Hazel filed, styled as Hazel v. Quarterman, civil action no. A-06-CA-610 (W.D.Tex., Feb. 21, 2007) (available on WESTLAW at 2007 WL 593608), shows that the case involved claims regarding the time credits to which Hazel was entitled following his release from confinement on parole in 2004. A "corrected affidavit" from Threadgill is attached to the respondent's answer in that case, but that affidavit contains no mention of "bonus time."

In any event, even if Hazel had accumulated "bonus time" prior to his release on parole, such time was used to advance his parole eligibility and is not restored after the parole for which it was

used is revoked. *See* <u>Ex Parte Hallmark</u>, 883 S.W.2d 672, 674 (Tex.Crim.App. 1994). There is no inconsistency in affidavits saying that he had bonus time at one time, and that he no longer has any following the revocation of his parole. Hazel's objection on this point is without merit.

Hazel says that the Court should be "alarmed" that the prison system is offering signing bonuses to new correctional officials, saying that such bonuses are "usually associated with athletes." He says that the prison officials have lowered the standards so as to hire people who were previously unqualified, and so when the economy worsens, there will be a "predictable collapse" to being severely short of guards. He states that the Court can "take a stand" to prevent this. Although Hazel complains that the prison is understaffed, he also complains that the prison officials are seeking to remedy the situation in ways which he believes will not be effective. His objection on this point is without merit.

Hazel says that full disclosure should have produced work orders and notes during Hurricane Ike, as well as verifying that the warden deliberately turned off the power and lights to the cells housing black and Hispanic inmates. In fact, Hazel says, all of the disruptions at the Eastham Unit as a result of the hurricane were really nothing more than attempts to cover up the unit administration's actions in misrepresenting facts by claiming that they had backup generators and lights when they did not. Hazel offers no factual basis for these assertions, and his objection on this point is without merit.

In a new claim, raised for the first time in his objections, Hazel says that he has learned that a norovirus has been spreading, in part though unsanitary food service utensils, and it has shut down approximately nine units, and partially shut down another 19. He says that the likelihood of future injury has come to pass before this case is even over. Hazel also mentions an inmate escape, which he attributes to "guard apathy, corruption, and lack of proper security," and poses the question of whether there have to be "mass escapes and riots" before the Court brings the case to trial. Issues raised for the first time in objections to the Report of the Magistrate Judge are not properly before the District Court. <u>Finley v. Johnson</u>, 243 F.3d 215, 218 n.3 (5th Cir. 2001), *citing* <u>United States v.</u>

Armstrong, 951 F.2d 626, 630 (5th Cir. 1992); Cupit v. Whitley, 28 F.3d 532, 535 n.5 (5th Cir. 1994). To the extent that the norovirus and the escape are "new claims," they are not properly before the Court, and Hazel offers nothing to show that the virus was spread as a result of the food service procedures which he complains of in his lawsuit. His objection on this ground is without merit.

Hazel turns again to the issue of discovery, saying that the defendants have offered proof on "mundane and simplistic areas" while hiding the serious maintenance needs and non-compliance concerning the infrastructure of the Eastham plumbing and electrical systems. He says that it is the intent of the policymakers to not adequately fund and staff the prison so as to "stretch the budget as far as possible." He says that the fact-specific nature of his allegations demands completion of discovery and full disclosure. The Magistrate Judge ordered the Defendants to provide full disclosure, and the fact that Hazel did not receive proof in writing of all of his allegations does not show that such disclosure was not carried out. His objection on this point is without merit.

Finally, Hazel states that the American judicial system and law do not provide exceptions for avoiding the "ugly reality" that the federal courts must again get involved in the operation of the Texas prison system even though the Ruiz case has been dismissed. He has shown no basis for the type of federal intervention which he seeks. Hazel's objection on this point is without merit.

The Court has conducted a careful *de novo* review of the pleadings and testimony in this cause, together with the competent summary judgment evidence, the Report of the Magistrate Judge, and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the objections of the Plaintiff are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and that the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the Defendants' motion for summary judgment (docket no.95) is GRANTED. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **18** day of **March, 2010.**


_____
Ron Clark, United States District Judge